This case arises out of an action filed in Shelby County Circuit Court by Leon Kelly against Richard Arrington, Jr., mayor of the City of Birmingham, in Arrington's individual capacity, alleging that an article written by the mayor and published in the Birmingham Times[1] contained false and defamatory statements regarding Mr. Kelly. On December 12, 1991, Mayor Arrington filed a motion to transfer the case to Jefferson County. On January 21, 1992, the trial court denied the motion. Mayor Arrington subsequently petitioned this Court for a writ of mandamus directing the trial judge to vacate the order denying his motion. We grant the writ.
Venue in this case is to be determined pursuant to Ala. Code 1975, § 6-3-2(a)(3), which provides:
 "(a) In proceedings of a legal nature against individuals:
". . . .
 "(3) All [noncontractual] personal actions [not involving real estate], if the defendant or one of the defendants has within the state a permanent residence, may be commenced in the county of such residence or in the county in which the act or omission complained of may have been done or may have occurred."
(Emphasis added.) Because Mayor Arrington, whose permanent residence is in Jefferson County, is the only defendant in this case, venue lies only in that county unless "the act or omission complained of" occurred in Shelby County. The disposition of this case thus turns on the proper interpretation of the phrase, "act or omission," in the context of an action alleging defamation through the newspaper medium.[2]
Kelly concedes that if this action had been brought against the corporate newspaper publisher rather than the author of the newspaper column, venue would have been proper only in Jefferson County, pursuant to Ala. Code 1975, § 6-3-7, which provides for actions against corporations "in the county where the injury occurred" (emphasis added). He insists, however, that the phrase "in which the act or omission . . . occurred," § 6-3-2(a)(3), denotes the county in which the damage allegedly occurred. In this respect, he contends that Alabama law recognizes a distinction between suits against newspaper publishers and suits against individual columnists. We disagree.
In Age-Herald Publishing Co. v. Huddleston, 207 Ala. 40,92 So. 193 (1921), which involved a corporate defendant, this Court held that in libel actions involving "newspaperpublications," venue is proper in the county in which the newspaper is printed. Kenney v. Gurley, 208 Ala. 623, 625,95 So. 34, 36 (1923) (emphasis added). In Age-Herald, the Court set forth the following rationale:
 "What we have to determine is, not what was the common law of venue in libel suits, but what is the statutory law of venue in Alabama, as prescribed by section 6112 [the predecessor of Ala. Code 1975, § 6-3-7]:
 " 'A foreign or domestic corporation may be sued in any county in which it does business by agent; but all actions for personal injuries must be brought in the county where the injury occurred, *Page 26 
or in the county where the plaintiff resides, if such corporation does business by agent in the county of plaintiff's residence.' (Italics ours.)
 "It is clear that the word 'injury' — in the Latin, injuria — in the phrase 'where the injury occurred,' is used in its proper legal sense of wrong, importing, of course, a wrongful act or omission. 'Damage,' the result of the wrongful act — technically called the damnum — is a correlative term of wholly distinct meaning and application. The significance of the terms — 'injury' and 'damage' — is sharply contrasted in the familiar legal phrases, damnum absque injuria, and injuria sine damno.
 "The meaning we accord to 'injury' in section 6112 is made clearer by a consideration of 6110 [the predecessor of § 6-3-2], which is a general venue statute, and which authorizes the bringing of non-contractual personal actions either in the county of the defendant's residence, 'or in the county in which the act or omission complained of may have been done, or may have occurred.' Certainly, in enacting the later section [§ 6112, the predecessor of § 6-3-7], the Legislature did not intend to change the basis of venue in tort actions from the county in which the wrongful act was done or occurred to the county, or any county, in which the resulting damage occurred, and to thereby effect so vital a change in actions only against corporate defendants, and for personal injuries only.
 "It results that, under section 6112 [the predecessor of § 6-3-7], the venue in this action must be laid in the county where the wrongful act — that is, the act violative of plaintiff's rights — was done. That act was, of course, the publishing of libelous matter in defendant's newspaper, 'published at Birmingham' — so the complaint alleges, in accordance with the form prescribed by the statute for this action."
Id., 207 Ala. at 44, 92 So. at 197 (emphasis added) (citations omitted). As the Court's analysis clearly indicates, the rule laying venue in the county in which the defendant publisher's newspapers were printed flowed from the Court's construction of the predecessor of § 6-3-2, the section at issue in this case. Thus, if the phrase "where the injury occurred" denotes the county in which the newspaper was printed in actions against a newspaper publisher, then, a fortiori, the phrase "in which the act or omission . . . occurred" denotes the county in which the newspaper was printed, that is, in Jefferson County. See alsoEx parte Wilson, 408 So.2d 94, 96 (Ala. 1981) ("injury
happens in only one county, the county of original publication" [emphasis in original]). Consequently, we hold that in actions against individuals alleging the publication of libelous matter in a newspaper article, venue lies in the county in which the newspaper was printed.
The logic and equity of this rule become even more apparent when the rule is contrasted with the one proposed by Mr. Kelley. In oral argument before the trial judge, counsel for Mr. Kelly conceded that "[w]hen you sue a newspaper that is published at one location, it would be unfair to expose that newspaper to litigation everywhere the newspaper is sold." (Emphasis added.) Nevertheless, he contends, in effect, that anindividual who publishes an article in a newspaper of statewide circulation should be subject to suit in any of this state's 67 counties. As the above-cited cases indicate, Alabama law has not recognized such an anomaly, and we decline to adopt a rule that would result in one. Because the petitioner had a "clear legal right," Ex parte Izundu, 568 So.2d 771, 772 (Ala. 1990), to an order transferring the case to Jefferson County, his petition is hereby granted.
WRIT GRANTED.
HORNSBY, C.J., and ALMON, ADAMS, HOUSTON, KENNEDY and INGRAM, JJ., concur.
[1] Relevant portions of this article were also subsequently republished in the Birmingham News.
[2] The undisputed facts reveal that the newspapers are printed and published in Jefferson County and that Mayor Arrington researched and wrote the article in Jefferson County. *Page 27